*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 30**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In re: Inquiry of a Judge
THE HONORABLE KEVIN CHRISTENSEN

No. 20120523
Filed May 21, 2013

Original proceeding in this Court

Attorneys:

Colin R. Winchester, Ogden, for Judicial Conduct Commission

Jason M. Yancey, Clearfield, for Judge Christensen

John E. Swallow, Att'y Gen., Bridget K. Romano, Asst. Att'y Gen.,
Salt Lake City, for amicus

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    This judicial discipline proceeding involves the statutory cap on the salaries of justice court judges who are employed by more than one municipality. Following an investigation, the Judicial Conduct Commission (JCC) found that the salary of justice court judge Kevin Christensen exceeded the statutory cap during the years 2009 through 2011, and recommended that he be censured and ordered to repay the excess amounts. We adopt the JCC's recommendations.

## BACKGROUND

¶2    Since at least the beginning of 2009, Judge Kevin Christensen has been employed as a justice court judge by four Utah municipalities. Under Utah Code section 78A-7-206(1)(e), "[a] justice court judge employed by more than one entity as a justice court judge, may not receive a total salary for service as a justice court judge greater than the salary of a district court judge." In late 2010, Judge Christensen became aware that his salary exceeded this statutory maximum. He claims to have immediately contacted his

municipal employers to discuss the problem. However, several months later, his salary had not been reduced.

¶3     In August 2011, following unsuccessful attempts to contact Judge Christensen,[1] the Administrative Office of the Courts filed a complaint with the JCC. The JCC investigated the allegations in the complaint and, in November 2011, issued formal charges against Judge Christensen. The formal charges alleged that Judge Christensen had been overpaid during the years 2009 through 2011, in violation of the Utah Constitution, statutory law, and the Code of Judicial Conduct.

¶4     The JCC and Judge Christensen stipulated to a number of facts and legal conclusions, including the following:

> For calendar years 2009 through 2011, Utah Code Ann. § 78A-7-206(1)(e) provided, "A justice court judge employed by more than one entity as a justice court judge, may not receive a total salary for service as a justice court judge greater than the salary of a district court judge."
>
> For calendar years 2009 through 2011, the salary of a district court judge was $132,150.
>
> For calendar years 2009 through 2011, Judge Christensen's total salaries for service as a justice court judge were respectively $139,908, $139,360, and $139,354. . . .
>
> As of January 1, 2012, Judge Christensen no longer receives combined judicial salaries that exceed the salary of a district judge. . . .
>
> Subject only to Judge Christensen's claim that this matter should be dismissed due to the alleged unconstitutionality of § 78A-7-206(1)(e), Judge Christensen's actions violate Rule 1.1 of the Code of Judicial Conduct, which states, "A judge shall comply with the law."

---

[1]  Rick Schwermer of the Administrative Office of the Courts reportedly left Judge Christensen a voicemail and also sent him an email. Judge Christensen claims not to have received the voicemail and explains that he did not initially open the email because it appeared in his inbox as an email sent by "Judge Kevin Christensen," not by Rick Schwermer.

> Subject only to Judge Christensen's claim that this matter should be dismissed due to the alleged unconstitutionality of § 78A-7-206(1)(e), Judge Christensen's actions constitute conduct prejudicial to the administration of justice which brings a judicial office into disrepute, in violation of Article VIII, Section 13 of the Constitution of Utah and Utah Code Ann. § 78A-11-105(1).

> Subject only to Judge Christensen's claim that this matter should be dismissed due to the alleged unconstitutionality of § 78A-7-206(1)(e), a censure is an appropriate sanction in this matter.

> Subject only to Judge Christensen's claim that this matter should be dismissed due to the alleged unconstitutionality of § 78A-7-206(1)(e), Judge Christensen should also be ordered to pay back any and all excess salary received during calendar years 2009, 2010 and 2011. The obligation should be paid in full within three years of date hereof, and should not bear interest.

Subsequently, the JCC issued Findings of Fact and Conclusions of Law, which contained the same substance as the Stipulation. The JCC also issued an Order of Censure to "take effect upon implementation . . . by the Utah Supreme Court." The order provided that Judge Christensen be censured and be required to repay the excess salary he received from 2009 through 2011.

¶5　　We have jurisdiction to "review the commission's proceedings as to both law and fact" and to "issue [an] order implementing, rejecting, or modifying the commission's order." UTAH CONST. art. VIII, § 13.

## STANDARD OF REVIEW

¶6　　As we explained in *In re Anderson*, 2004 UT 7, 82 P.3d 1134, the relationship between the Judicial Conduct Commission and the supreme court is not analogous to the relationship between a trial court and an appellate court. The JCC acts as an investigatory and advisory committee, "not as an independent body with the power to impose consequences . . . that are simply subject to appellate review." *Id.* ¶ 10. Accordingly, "the [supreme] court is obligated neither to accept the judgment of the Judicial Conduct Commission on matters of law or fact nor to adopt any recommended sanction." *Id.* ¶ 11. "[A]s matter of constitutional deference," however, we

"treat[] the findings and recommendations of the Judicial Conduct Commission with a significant degree of respect." *Id.*

**ANALYSIS**

¶7     Judge Christensen argues that Utah Code section 78A-7-206(1)(e), the statutory provision he stipulated to having violated, is unconstitutional. We decline to reach this issue because a judge may not properly assert for the first time in a disciplinary proceeding the defense that a law the judge has violated is unconstitutional. After considering the record and the mitigating factors offered by Judge Christensen, we adopt the recommendations of the JCC.

I. JUDGE CHRISTENSEN CANNOT CHALLENGE FOR
THE FIRST TIME IN A DISCIPLINARY HEARING THE
CONSTITUTIONALITY OF A STATUTE HE HAS VIOLATED

¶8 Judge Christensen argues that the cap on justice court judges' salaries found in Utah Code section 78A-7-206(1) violates the uniform operation of laws provision of the Utah Constitution. We do not reach this constitutional question, however, because judges are not at liberty to disregard the law and only later, after they are caught, challenge the law's constitutionality.[2]

> [T]he appropriate standard of behavior for a judge is to observe the law as it exists at the time, and if he seeks to challenge it, to set forth his reasoning in a record of decision in a case before him or to bring an action seeking a declaratory judgment . . . . It cannot be acceptable behavior for a judge to fail to obey the law without at the time providing any reason to believe a constitutional objection motivated the failure, only years later in disciplinary proceedings to unveil a constitutional objection.

*In re Anderson*, 2004 UT 7, ¶ 66, 82 P.3d 1134.

¶9     When judges ignore the law with no apparent justification, they undermine public confidence in the integrity of the judiciary. The public's respect for the judiciary "is a necessary element of the rule of law." *In re Steed*, 2006 UT 10, ¶ 6, 131 P.3d 231. Judges are accordingly held to a higher standard of compliance with the law than is the general public. *See* UTAH CODE JUD. CONDUCT R. 1.2 (requiring judges to "act at all times in a manner that promotes . . .

---

[2] Even though we do not reach Judge Christensen's constitutional challenge, we appreciate the work of the Utah Attorney General's office in briefing and arguing this issue at our request as amicus.

public confidence in the . . . integrity . . . of the judiciary and [to] avoid impropriety and the appearance of impropriety").

¶10 Before disciplinary proceedings commenced, Judge Christensen did not allege formally or informally that the cap on justice court judges' salaries was unconstitutional. Nor do the record or the briefs suggest that Judge Christensen's violation of the statute was causally related to or even temporally correlated with his belief that the law was unconstitutional. Rather, the record and the briefs suggest that only after the JCC issued formal charges against Judge Christensen did he formulate a constitutional justification for his actions. This is unacceptable behavior for a judge.[3]

## II. WE ADOPT THE SANCTIONS RECOMMENDED BY THE JUDICIAL CONDUCT COMMISSION

¶11 Judge Christensen stipulated that unless we found Utah Code section 78A-7-206(1)(e) to be unconstitutional, his actions constituted "conduct prejudicial to the administration of justice which brings a judicial office into disrepute," a sanctionable offense under article VIII, section 13 of the Utah Constitution and under Utah Code section 78A-11-105(1)(e). He also stipulated that if his constitutional claim failed, his actions constituted a violation of rule 1.1 of the Code of Judicial Conduct, which provides, "A judge shall comply with the law." Finally, he stipulated that if his constitutional claim failed, censure and repayment were appropriate sanctions.

¶12 Despite these stipulations, Judge Christensen offers mitigating factors to persuade us to adopt a lesser sanction than that to which he stipulated. Ordinarily, parties are bound by their stipulations. *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶¶ 13–14, 296 P.3d 709. However, because of our plenary authority over judicial disciplinary matters, *see In re Anderson*, 2004 UT 7, ¶¶ 9–11, 82 P.3d 1134, and our constitutional duty to impose sanctions that we find to be "just and proper," UTAH CONST. art. VIII, § 13, we are not bound to enforce the Stipulation.

¶13 Nonetheless, even in a judicial discipline proceeding, we view a party's stipulations to be highly indicative of the facts as they

---

[3] Judge Christensen also seeks to challenge the constitutionality of section 78A-7-206(1) prospectively. However, a disciplinary proceeding is not the proper setting for such a challenge. The scope of the present matter is limited to whether Judge Christensen violated the Code of Judicial Conduct and, if so, what sanction is appropriate.

actually occurred. Further, we recognize that stipulations often represent compromises and bargains. For example, the JCC may agree not to recommend more severe sanctions or not to allege an additional violation if a judge stipulates to certain facts or to the appropriateness of certain sanctions. Thus, we will generally give effect to stipulations between judges and the JCC unless our constitutional obligation to prescribe a "just and proper" sanction compels us to do otherwise. *See Id.*

¶14   Here, none of the  mitigating factors offered by Judge Christensen persuade us that the sanctions to which he stipulated would be unjust or improper. First, Judge Christensen points out that the JCC did not hold a hearing and therefore did not "weigh the facts." This factor is not mitigating because it does not reflect on Judge Christensen's level of culpability. *See* BLACK'S LAW DICTIONARY 1093 (9th ed. 2009) (defining "mitigator" as "[a] factor tending to show that [an actor], though guilty, is less culpable than the act alone would indicate"). Furthermore, because Judge Christensen has not identified any factual issues that were not resolved by the Stipulation, we see no reason why a hearing would have been necessary.

¶15   Second, Judge Christensen contends that he was "caught between two conflicting statutes": Utah Code section 78A-7-206(1)(e), which sets a statutory cap on the salaries of justice court judges, and Utah Code section 78A-7-207(2), which provides that "[t]he salary fixed for a justice court judge may not be diminished during the term for which the judge has been appointed or elected." Below, we hold that section 78A-7-207(2) does not prohibit justice court judges from voluntarily accepting a lower salary in order to comply with section 78A-7-206(1)(e). *Infra* ¶¶ 18–19. We nonetheless recognize that if Judge Christensen were actually delayed in bringing his salary into compliance with the statutory cap because of the municipalities' concerns about section 78A-7-207(2), this fact could potentially be mitigating. However, the record was not developed on this point because Judge Christensen stipulated that the proposed sanctions were appropriate. If Judge Christensen had raised this mitigating argument to the JCC, its investigators likely would have interviewed municipality officials to determine whether Judge Christensen was as diligent as he claims to have been and whether any concerns they may have had regarding section 78A-7-207(2) resulted in delay. We decline to give Judge Christensen's assertions the benefit of the doubt, or to reopen fact-finding in this case, *see, e.g., In re Anderson*, 2004 UT 7, ¶ 19 (appointing a special

master to engage in additional fact-finding in a judicial discipline case), because the paucity of evidence is a result of Judge Christensen's decision to enter the Stipulation.

¶16    Finally, Judge Christensen argues in mitigation that (1) the proposed sanction "does not specify to whom or in what proportion each municipality should be 'repaid,'" and that (2) "repaying the municipalities as recommended by the JCC is likely barred by [Utah Code section 78A-7-207(2)]," which provides that a justice court judge's salary "may not be diminished" during his term. These are not mitigating factors because they do not reflect on Judge Christensen's level of culpability. *See supra* ¶ 14. Rather, they pose questions about the logistics of complying with the repayment order. Because no sanction is final until adopted by this court, we can and will resolve these questions in this opinion.

¶17    Having considered the record and the arguments and having not been persuaded that the mitigating factors offered by Judge Christensen would render the proposed sanctions unjust or improper, we adopt the JCC's factual findings, legal conclusions, and proposed sanctions. Judge Christensen is censured and ordered to repay the excess salary he received in 2009, 2010, and 2011. Repayments are to begin on July 1, 2013[4] and are to be completed within three years of that date. Repayments are not to include interest. Repayments should be made pro rata to the municipalities that employed Judge Christensen during the relevant years. We request that the Administrative Office of the Courts work with Judge Christensen to create a repayment plan and to monitor his compliance with that plan.

¶18    The ordered repayments will not violate Utah Code section 78A-7-207(2). Although section 78A-7-207(2)'s directive that "[t]he salary fixed for a justice court judge may not be diminished" could be read in isolation to prevent any person, including a judge, from reducing a judicial salary, in context, it is clear that the directive applies only to municipalities acting unilaterally. When interpreting a statute, we construe "each part or section . . . in connection with every other part or section so as to produce a harmonious whole." *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 21, 266 P.3d 751 (emphasis omitted) (internal quotation marks omitted). We will not interpret section 78A-7-207(2) to make compliance with the

_____

    [4] We modify the JCC's order insofar as it required repayments to be completed within three years of its issuance date of May 31, 2012.

salary cap in the preceding section nearly impossible[5] for justice court judges who discover they are being overpaid.

¶19   Section 78A-7-207(2) was designed to prevent municipalities from exerting improper control over judges by threatening to reduce their salaries. Concerns of judicial independence are not present when a judge, seeking to comply with the law, requests a salary reduction. We therefore hold that Utah Code section 78A-7-207(2) is not violated when a municipality honors a justice court judge's request to have his salary reduced to comply with Utah Code section 78A-7-206(1)(e).

### CONCLUSION

¶20   We adopt the JCC's factual findings, legal conclusions, and proposed sanctions. Judge Christensen is censured and ordered to repay the excess salary he received in 2009, 2010, and 2011.

------

[5]   Under this interpretation, the only way to comply with both statutory sections would be to resign from one or more positions.