*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 19**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In re INQUIRY OF A JUDGE:
THE HONORABLE JUDGE MICHAEL KWAN

No. 20171041
Filed May 22, 2019

Original Proceeding in this Court

Attorneys:

Alex G. Peterson, Salt Lake City, for Judicial Conduct Commission

Gregory G. Skordas, Salt Lake City, for Judge Michael Kwan

JUSTICE PEARCE authored the opinion of the Court, in which
JUSTICE PETERSEN, JUDGE POHLMAN, JUDGE HARRIS,
and JUDGE HAGEN joined.

Having recused themselves, CHIEF JUSTICE DURRANT,
ASSOCIATE CHIEF JUSTICE LEE, and JUSTICE HIMONAS
do not participate herein.

COURT OF APPEALS JUDGES JILL M. POHLMAN, RYAN M. HARRIS,
and DIANA HAGEN sat.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1　This judicial discipline proceeding requires us to decide the appropriate sanction for a judge who has engaged in repeated misconduct. Judge Michael Kwan acknowledges that he violated the Utah Code of Judicial Conduct when he made seemingly shirty and politically charged comments to a defendant in his courtroom. Judge Kwan similarly admits that he violated the code of conduct when he lost his temper with a member of the court's staff and improperly used his judicial authority to seek that individual's removal from the premises. Moreover, in response to questions at oral argument, Judge Kwan conceded that an online post critical of then-presidential candidate Donald Trump also violated the code of conduct. But

Judge Kwan argues that the six-month suspension the Judicial Conduct Commission (JCC) recommends is inappropriate. He claims that sanction rests, in part, on an unlawful attempt to regulate his constitutionally protected speech, and he asserts that a less severe penalty is all that is warranted.

¶2 Judge Kwan raises important First Amendment questions, but he fails to address our case law holding that a judicial disciplinary proceeding is an improper venue to press those constitutional claims. Bound by our precedent, we therefore do not address the constitutional questions, and we limit our consideration to that portion of Judge Kwan's online speech that he concedes we can permissibly sanction. That statement, coupled with the other misconduct before us, as well as Judge Kwan's history of prior discipline, convinces us that a six-month suspension without pay is the appropriate sanction.

## BACKGROUND

### History of Misconduct

¶3  Judge Kwan has served as a justice court judge for the City of Taylorsville for the past two decades. On multiple occasions, the JCC has reviewed allegations that Judge Kwan violated various provisions of the Utah Code of Judicial Conduct. As a result of the JCC's investigations into those allegations, Judge Kwan has received two letters of education from the JCC and two public reprimands from this court. The Utah State Bar Ethics Advisory Opinion Committee has also issued two opinions relating to Judge Kwan—one not expressly naming him but directed to his conduct, and another issued in response to his questions regarding, among other things, rules limiting judicial commentary on statements made by a candidate for political office. *See* Utah State Bar Ethics Advisory Committee, Informal Opinion 16-02 (2016); Utah State Bar Ethics Advisory Committee, Informal Opinion 15–01 (2015).

¶4  This guidance has been animated by two general concerns regarding Judge Kwan's behavior: his improper use of judicial authority and his inappropriate political commentary. The JCC's letters of education addressed Judge Kwan's abuse of judicial authority, which manifested in improperly revoking probation, imposing jail in absentia, and ordering excessive bail. The letters were issued in response to complaints the presiding judge of the Taylorsville Justice Court lodged against Judge Kwan. The complaints followed multiple letters from the presiding judge to Judge Kwan, raising concerns about the manner in which he handled his cases. And in its communications, the JCC advised Judge Kwan

of its concerns that he had issued several warrants with excessive bail amounts and had not followed Utah law when revoking probation.

¶5 Our first public reprimand addressed Judge Kwan's crass in-court reference to sexual conduct and a former president of the United States. During the underlying proceeding before the JCC concerning that comment, Judge Kwan acknowledged that the Utah Code of Judicial Conduct requires judges to be patient, dignified, and courteous to those with whom the judge deals in an official capacity. *See* UTAH CODE JUD. CONDUCT R. 2.8(B). He also acknowledged that his comments violated that requirement and constituted conduct prejudicial to the administration of justice.

¶6 Our second public reprimand addressed political activities associated with Judge Kwan's service as president of a nonprofit organization. The organization took public positions on a range of issues, criticized candidates for political office, and posted articles and press releases online that included Judge Kwan's name and judicial title.

¶7 During the underlying proceeding before the JCC regarding that conduct, Judge Kwan again acknowledged that he had engaged in conduct prejudicial to the administration of justice and had violated several rules of the Utah Code of Judicial Conduct. Among those rules were rule 1.2, which provides that "[a] judge . . . shall not undermine . . . public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety," UTAH CODE JUDICIAL CONDUCT R. 1.2, and Canon 4, which provides that "a judge . . . shall not engage in political . . . activity that is inconsistent with the independence, integrity, or impartiality of the judiciary," *id.* Canon 4.

¶8 During that same JCC proceeding, Judge Kwan acknowledged receiving guidance from the Utah State Bar Ethics Advisory Opinion Committee on these issues. That committee issued two informal opinions addressing Judge Kwan's service as president of the nonprofit organization. The first opinion addressed "whether a full-time justice court judge may ethically serve as the national president of an organization dedicated to advancing the social, political, and economic well-being of a specific ethnic group." Utah State Bar Ethics Advisory Committee, Informal Opinion 15–01 at 1 (2015). Concluding that a judge may not, the opinion cited several principles regarding judicial service, including the obligation to not undermine public confidence in the independence and impartiality of the judiciary. *Id.* at 4–5. The opinion tied that obligation directly to

Utah Code of Judicial Conduct Rule 4.1(A)(3), which provides that a judge shall not publicly endorse or oppose a candidate for any public office. *Id.* at 4. The opinion then expressly advised that "[a] judge may not make any public statements that can be viewed as opposing or supporting a political candidate." *Id.* at 5.

¶9 The second informal opinion addressed the same topic, responding to questions Judge Kwan posed. Utah State Bar Ethics Advisory Committee, Informal Opinion 16-02 (2016). Among other things, Judge Kwan asked whether a judge may "criticize or commend statements made by a candidate for political office" if the judge does not "endorse[] or oppose[] the candidate." *Id.* at 1. The opinion reiterated that a judge is obligated to "uphold the integrity of the judiciary" and refrain from engaging in activities that would "undermine public confidence" in its independence and impartiality. *Id.* at 3. The opinion then responded that "[w]hen an individual is running for public office, a judge's public comments either praising or criticizing that individual can be reasonably viewed as support or opposition." *Id.* The opinion thus concluded, in response to the question noted above, that "a judge's comments commending or criticizing a political candidate . . . can reasonably be viewed as endorsing or opposing the candidate." *Id.* at 4.

### Current Allegations

¶10 After the Utah State Bar issued these opinions, and shortly after we handed down our second public reprimand, the JCC began investigating additional potential misconduct. Specifically, the JCC investigated allegations that Judge Kwan: (1) made political statements in court, (2) handled a dispute with court personnel inappropriately, and (3) posted political comments online. During the investigation, Judge Kwan conceded that he had engaged in the behavior underlying the allegations.

### *In-Court Political Statements*

¶11 In January 2017, while presiding over a hearing, Judge Kwan launched into an exchange with a defendant that appeared to demean the defendant and included political commentary regarding President Trump's immigration and tax policies:

> Judge: So, what happened with your fine payments?
>
> Defendant: So, I, just, live paycheck to paycheck . . . .
>
> Judge: Ok. So, when you set up the pay plan you were hoping you would have the money and it didn't pan out that way?

> Defendant: And I did not call, but I plan on when I get my taxes to just pay off all my court fines, because I cannot end up in jail again for not complying.

> Judge: You do realize that we have a new president, and you think we are getting any money back?

> Defendant: I hope.

> Judge: You hope?

> Defendant: I pray and I cross my fingers.

> Judge: Ok. Prayer might be the answer. 'Cause, he just signed an order to start building the wall and he has no money to do that, and so if you think you are going to get taxes back this year, uh-yeah, maybe, maybe not. But don't worry[,] there is a tax cut for the wealthy so if you make over $500,000 you're getting a tax cut. You're right[] there[,] right? Pretty close? All[]right, so do you have a plan? Other than just get the tax cut and pay it off?[1]

*Dispute with Court Personnel*

¶12 In February 2017, Judge Kwan learned that an administrative staff member had been promoted without his involvement. In response, Judge Kwan confronted the Clerk of Court in a manner that multiple witnesses described as "angry" and "screaming." A short time later, Judge Kwan submitted a written notice for disciplinary action with respect to the Clerk of Court, threatened to put her on unpaid suspension pending termination, and directed her to be escorted from the premises via an email understood by its recipients to be a judicial order — in part because the email included a signature block indicating that it was a judicial order.[2]

---

[1] Judge Kwan contends that this was intended to be funny, not rude. It is an immutable and universal rule that judges are not as funny as they think they are. If someone laughs at a judge's joke, there is a decent chance that the laughter was dictated by the courtroom's power dynamic and not by a genuine belief that the joke was funny.

[2] Judge Kwan testified before the JCC that the signature block was unintentionally included in the email. The JCC did not find that assertion credible based upon "Judge Kwan's Stipulation, [his]

(continued . . .)

*Online Political Comments*

¶13   During 2016, Judge Kwan repeatedly posted comments and shared articles on his Facebook and LinkedIn accounts regarding then-presidential candidate Donald Trump.[3] Judge Kwan continued to post comments and articles regarding Donald Trump following the presidential election. Over that same period, between mid-2016 and early 2017, Judge Kwan posted comments or shared articles on several other topics including immigration, gun violence, and voter participation.

¶14   On November 8, 2016, for example, Judge Kwan wrote a lengthy post on voter participation, which opened, "Dear Generation X and Millennial Voters, So many people have tried to convince you of the importance of your participation in this year's election. . . . Let me join in the effort . . . by giving you the cold, hard truth: You have to vote to stop your elders from screwing up your future!" Judge Kwan continued, "What kind of future do you want? Want help with your student loan debt? Want affordable tuition? Affordable health insurance? . . . Grab a friend and Go Vote."

¶15   With respect to Donald Trump, Judge Kwan's postings were laden with blunt, and sometimes indelicate, criticism. In July 2016, for example, Judge Kwan posted an article entitled "Ghazala Khan: Trump criticized my silence. He knows nothing about true sacrifice." Above the article's headline, Judge Kwan added, "Checkmate."

¶16   On September 26, 2016, the night of the first presidential debate between candidates Donald Trump and Hillary Clinton, Judge Kwan wrote:

---

answers during his testimony, and [his] demeanor during testimony." Judge Kwan has not challenged this finding, and we see no reason to disagree with it.

[3] Judge Kwan's Facebook account was "private," but Judge Kwan does not assert that this exempts those comments from regulation under the Utah Code of Judicial Conduct. In addition, Judge Kwan has not elaborated on the "limited number of friends" allegedly given access to his Facebook account or suggested that those individuals would not share his comments or postings more widely. Instead, Judge Kwan has acknowledged that "his posts [might] be reposted by his friends."

> Contradictory: person who got rich by not paying people for their work but complains about NATO not paying their fair share.

> Food for thought: If a person tries to show their ties to a community by talking about their investments and properties and not about the people of the community, it speaks to that person's priorities.

> Quick question: Is the fact that the IRS has audited you almost every year when your peers hardly ever or never have been, something to be proud of? What does that say . . . about your business practices?

> Wish she said: "Donald, I'm used to having a man interrupt and dismiss me when I speak because egotistical men hav[e] been trying to do that to me for my entire career."

¶17 On November 11, 2016, three days after the presidential election, Judge Kwan remarked, "Think I'll go to the shelter to adopt a cat before the President-Elect grabs them all . . . ."

¶18 On January 20, 2017, the day President Trump was inaugurated, Judge Kwan commented, "Welcome to governing. Will you dig your heels in and spend the next four years undermining our country's reputation and standing in the world? . . . Will you continue to demonstrate your inability to govern and political incompetence?"

¶19 On February 13, 2017, Judge Kwan posted, "Welcome to the beginning of the fascist takeover." He continued, "[W]e need to . . . be diligent in questioning Congressional Republicans if they are going to be the American Reichstag and refuse to stand up for the Constitution, refuse to uphold their oath of office and enable the tyrants to consolidate their power."

¶20 Again, these are illustrative examples—not a comprehensive recitation—of the comments and articles shared online by Judge Kwan that referenced Donald Trump and a range of other topics between mid-2016 and early 2017.

### Proceeding Before the JCC

¶21 The JCC brought formal charges against Judge Kwan, alleging that his conduct was "prejudicial to the administration of justice." *See* UTAH CONST. art. VIII, § 13 (authorizing the sanction of judicial "conduct prejudicial to the administration of justice which brings a judicial office into disrepute"). The JCC also alleged that

Judge Kwan's conduct violated various provisions of the Utah Code of Judicial Conduct.

¶22   In particular, the JCC alleged that Judge Kwan's in-court political statements violated rules 1.2, 2.8, and 4.1. *See* UTAH CODE JUD. CONDUCT R. 1.2 (2017) ("A judge . . . shall not undermine . . . public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety."); *id.* 2.8(B) ("A judge shall be patient, dignified, and courteous to litigants, . . . court staff, . . . and others with whom the judge deals in an official capacity . . . ."); *id.* 4.1(A)(10) ("Except as permitted in this Canon, a judge . . . shall not . . . make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court . . . .").

¶23   With respect to the dispute with court personnel, the JCC alleged that Judge Kwan violated rules 1.1, 1.3, and 2.8. *See id.* 1.1 ("A judge shall comply with the law."); *id.* 1.3 ("A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge . . . ."); *id.* 2.8(B).

¶24   And based on the online postings, the JCC alleged that Judge Kwan violated rules 1.2, 3.1, 4.1(A)(3), and 4.1(A)(10). *See id.* 1.2; *id.* 3.1 ("[W]hen engaging in extrajudicial activities, a judge shall not: (A) participate in activities that will interfere with the proper performance of the judge's judicial duties; (B) participate in activities that will lead to unreasonably frequent disqualification of the judge; [or] (C) participate in activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality . . . ."); *id.* 4.1(A)(3) ("Except as permitted in this Canon, a judge . . . shall not . . . publicly endorse or oppose a candidate for any public office . . . ."); *id.* 4.1(A)(10).

¶25   As noted above, Judge Kwan acknowledged engaging in the conduct, and he also conceded that some of that conduct violated the Utah Code of Judicial Conduct. He characterized his in-court political statements as an inappropriate attempt at humor, and he admitted that the statements violated rules 1.2 and 2.8. Similarly, regarding his dispute with court personnel, Judge Kwan noted that his conduct was improper and agreed that it violated rule 2.8.

¶26   But with respect to his online political commentary, Judge Kwan raised a constitutional challenge. He asserted that, under the First Amendment, his "comments on social media about elected officials' policies and social and political issues" were "constitutionally protected speech." Judge Kwan claimed that restrictions on social commentary or political dialogue "must survive

a strict scrutiny analysis, i.e., [the restrictions] must be narrowly tailored to achieve a compelling state interest." Under that standard, Judge Kwan argued that the JCC could not constitutionally regulate speech addressing social or political issues or "public officials in general," but only speech addressing "candidates for public office," if that speech "expressly criticizes or praises [the] individual political candidate."

¶27 In Judge Kwan's view, his statements leading up to the presidential election were largely "social commentary or humor." He asserted that while some of those statements could be "construed" as applying to then-presidential candidate Donald Trump, none were "expressly" critical of him. On that basis, Judge Kwan argued that sanctioning him for those statements would violate his First Amendment rights.

¶28 Judge Kwan characterized his post-election statements as "more direct, critical, and strident" with respect to Donald Trump, but contended those comments did not address a candidate for office and were "synonymous with [Judge Kwan's] views on issues such as racism, civil rights, the plight of refugees, and constitutional limits on the executive branch." Thus, he claimed, his post-election statements were also "protected under the First Amendment."

¶29 Following a hearing, the JCC entered findings of fact and conclusions of law and determined that Judge Kwan's conduct was prejudicial to the administration of justice. In addition, the JCC concluded that Judge Kwan's in-court political statements violated Utah Code of Judicial Conduct Rules 1.2, 2.8, and 4.1(A)(10); his conduct stemming from the dispute with court personnel violated rules 1.3 and 2.8; and his online postings violated rules 1.2, 3.1, 4.1(A)(3), and 4.1(A)(10).

¶30 The JCC did not weigh in on the constitutional issues. The JCC opined that "making conclusions of law about the degree to which the requirements of the Utah Code of Judicial Conduct must yield to, or be reconciled with, the First Amendment, is beyond the scope of the [JCC's] authority." The JCC recognized, however, that Judge Kwan had "acknowledge[d] in his arguments that judicial speech which endorse[s] political candidates may be prohibited." And the JCC limited its consideration to online postings by Judge Kwan that it concluded could be "viewed as endorsing or opposing" Donald Trump, during the period in which Donald Trump was a presidential candidate.

¶31 To determine the appropriate sanction, the JCC considered a number of factors, including the public and private forums in

which the conduct occurred, the deliberate (as opposed to spontaneous) nature of the online postings, the appearance of impropriety and actual impropriety that occurred, the historical pattern of misconduct, the prior guidance issued and prior sanctions imposed, and "the potential and actual harm to the public's perception of fairness and impartiality in Utah's judicial system."

¶32  After "considering all of these factors," the JCC determined that "six months suspension without pay is the most appropriate sanction for [Judge Kwan's] violations of the Utah Code of Judicial Conduct." The JCC issued an order providing that Judge Kwan be suspended without pay for six months.

## Proceeding Before This Court

¶33  An order of the JCC does not become effective until this court reviews and implements it. UTAH CONST. art. VIII, § 13. Before us, Judge Kwan takes many of the same positions he maintained before the JCC. He concedes that his in-court political statement violated Utah Code of Judicial Conduct Rules 1.2 and 2.8. Likewise, he agrees that his handling of his dispute with court personnel was improper and violated rule 2.8.

¶34  Judge Kwan also reiterates the constitutional challenge he raised before the JCC regarding his online commentary. Without tailoring his arguments to the specific speech underlying the JCC's order, Judge Kwan addresses his numerous online postings and asserts that his "comments on social media about elected officials' policies and social and political issues are constitutionally protected speech." Judge Kwan claims strict scrutiny applies and, under that standard, speech that might be "construed" as critical of a candidate is protected, while "[s]peech that expressly criticizes or praises an individual candidate" may constitutionally be barred.

¶35  Judge Kwan thus designates "the independence and impartiality of the judiciary" as "a compelling state interest," and stipulates that restricting speech regarding political candidates, "partisan politics and public elections is [a] narrowly focused" and constitutional practice. As he puts it, "[s]peech regarding political or social issues is protected," but "speech that is reasonably and objectively a partisan political statement for or against a political candidate is not."

¶36  In that vein, Judge Kwan fervently defends his asserted right to speak on political or social issues, particularly those of personal interest to him. Accordingly, he argues the JCC must make "an objective assessment of [his] comments to determine if [they] fall

within the narrow scope of speech that is not protected because it endorses or opposes a political candidate for office," under the express endorsement or opposition standard he has articulated. Judge Kwan claims the JCC failed to engage in this type of analysis and, as a result, ordered a sanction "wholly disproportionate" to his conduct.

**STANDARD OF REVIEW**

¶37 The Utah Constitution provides that "[p]rior to the implementation of any" JCC order, this court "shall review the [JCC's] proceedings as to both law and fact. [This] court may also permit the introduction of additional evidence. After its review, [this court] shall, as it finds just and proper, issue its order implementing, rejecting, or modifying the [JCC's] order." UTAH CONST. art. VIII, § 13. Under this framework, the JCC "acts in a role more akin to an independent advisory committee" than to "an independent body with the power to impose consequences on a judge." *In re Anderson*, 2004 UT 7, ¶ 10, 82 P.3d 1134 (per curiam). Accordingly, the JCC's findings of fact and conclusions of law are not binding on this court, *id.* ¶ 11, and the JCC's recommended sanction receives no deference, *In re Worthen*, 926 P.2d 853, 865 (Utah 1996).

¶38 We recognize and appreciate, however, the significant contributions of the JCC's investigatory proceedings and accord its findings, conclusions, and recommendations a "significant degree of respect." *In re Anderson*, 2004 UT 7, ¶ 11. But, in the end, the constitutional responsibility to impose discipline rests with this court.

**ANALYSIS**

I. The Constitutional Questions

¶39 Judge Kwan raises a number of interesting and important constitutional issues—questions that, under our precedent, we cannot resolve in this action. Although neither the JCC nor Judge Kwan addresses the matter, we have repeatedly held that a judge may not raise a constitutional challenge for the first time in a judicial disciplinary proceeding. *E.g.*, *In re Christensen*, 2013 UT 30, ¶¶ 8–10, 304 P.3d 835; *In re Anderson*, 2004 UT 7, ¶¶ 63–67, 82 P.3d 1134. We have stated that

> the appropriate standard of behavior for a judge is to observe the law as it exists at the time, and if he seeks to challenge it, to set forth his reasoning in a record of decision in a case before him or to bring an action seeking a declaratory judgment at the time the law's

requirements allegedly infringe on his constitutional rights.

*In re Anderson*, 2004 UT 7, ¶ 66.

¶40 When applying this principle, we have reviewed the record for evidence of a constitutional objection contemporaneous with the alleged infraction. *E.g.*, *In re Christensen*, 2013 UT 30, ¶ 10 ("Before disciplinary proceedings commenced, Judge Christensen did not allege formally or informally that the [law] was unconstitutional. Nor do the record or the briefs suggest that Judge Christensen's violation of the statute was causally related to or even temporally correlated with his belief that the law was unconstitutional."); *In re Anderson*, 2004 UT 7, ¶ 65 ("[B]y failing to record his constitutional objection . . . in the cases before him, or in an action for declaratory judgment, Judge Anderson has failed to register his objection in any way contemporaneous with his refusal to observe the statutory requirements. He has therefore given us no reason to believe that constitutional principle motivated that refusal.").

¶41 Absent such evidence, we have concluded that a judge has "no recourse" to raise the constitutional objection in the disciplinary proceeding. *In re Anderson*, 2004 UT 7, ¶¶ 64–67 ("Judge Anderson cannot . . . excuse his failure to obey the statute's requirements after the fact by applying a rationale attacking those deadlines when that rationale plainly played no role in his refusal to observe the statutory deadlines for adjudicating cases."); *see also In re Christensen*, 2013 UT 30, ¶¶ 8–10 ("[T]he record and the briefs suggest that only after the JCC issued formal charges against Judge Christensen did he formulate a constitutional justification for his actions. This is unacceptable behavior for a judge.").

¶42 We have applied this rule in an effort to maintain public confidence in the integrity of our judges and our system of law. As we noted in *In re Christensen*, "The public's respect for the judiciary is a necessary element of the rule of law," and "[w]hen judges ignore the law with no apparent justification, they undermine public confidence in the integrity of the judiciary." 2013 UT 30, ¶ 9 (citation omitted) (internal quotation marks omitted). "Judges are accordingly held to a higher standard of compliance with the law than is the general public." *Id.* We have therefore required judges to raise constitutional objections at the time a violation occurs if they want to challenge the constitutionality of the regulation before us.

¶43 In other words, we have required judges who fail to abide by laws or rules to put the public on notice that their violation is based on a principled contention that the law or rule is, itself,

unlawful. Without such notice, a judge may appear to violate laws or rules at will, in disregard of the legal system they are charged with administering. And when judges appear to consider themselves above the law, public confidence in the fairness and impartiality of our judicial and legal systems diminishes.

¶44 Judge Kwan has not pointed to any behavior putting the public on notice that his violation of the code of conduct was, in fact, a principled one. In particular, Judge Kwan does not assert that, at the time he posted his online comments, he raised a constitutional challenge to any provision of the Utah Code of Judicial Conduct that might regulate his speech, such as rules 1.2, 3.1, or 4.1. *See, e.g.*, UTAH CODE JUD. CONDUCT R. 1.2 ("A judge . . . shall not undermine . . . public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety."); *id.* 3.1 ("[W]hen engaging in extrajudicial activities, a judge shall not . . . participate in activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality . . . ."); *id.* 4.1(A)(3) ("Except as permitted in this Canon, a judge . . . shall not . . . publicly endorse or oppose a candidate for any public office . . . ."); *id.* 4.1(A)(10) ("Except as permitted in this Canon, a judge . . . shall not . . . make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court . . . .").

¶45 Judge Kwan's online postings thus give the appearance that Judge Kwan considered himself unfettered by the Utah Code of Judicial Conduct. That Judge Kwan engaged in this conduct in the face of, and contrary to, the guidance he sought, only amplifies the perception that Judge Kwan acted as if the rules did not apply to him. Because Judge Kwan did not challenge the application of the rules to him at the time he violated them, he is barred from asserting, in this proceeding, that we cannot constitutionally sanction judicial speech on social or political issues unless the speech expressly criticizes or praises a political candidate for office.

¶46 Still, we are mindful of the weighty implications of foreclosing arguments regarding a rule's unconstitutionality in a proceeding in which the rule is being applied. And we can foresee potential quandaries that may arise in requiring judges to adhere to such a rule. A violation of the code of conduct might be the product of an off-the-cuff remark or a spontaneous interaction, unaccompanied by the foresight to quickly exclaim constitutional principles, in case a disciplinary proceeding might follow. And judges acting with greater intention and foresight may be forced to put a public spotlight on private activities or interests, when

engaging in conduct that appears to be constitutionally protected, on the off-chance the JCC might consider it sanctionable.[4]

¶47    But this is our law, and Judge Kwan has not asked that *In re Christensen* and *In re Anderson* be overturned. We therefore leave for another day whether, applying the principles set forth in *Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345 P.3d 553, our contemporaneous constitutional objection requirement should be reconsidered. And we do not reach the merits of Judge Kwan's constitutional arguments.

¶48    Nevertheless, even if we were to accept Judge Kwan's constitutional contentions, a favorable decision on those arguments would not alter the outcome of this proceeding. In *In re Anderson* and *In re Christensen* we considered conduct that violated the law as part of the judicial disciplinary proceeding, despite the judge's arguments that those laws were unconstitutional. *See In re Christensen*, 2013 UT 30, ¶¶ 11–20; *In re Anderson*, 2004 UT 7, ¶¶ 75–91. We need not do that here. Because even if we only include the statement Judge Kwan concedes can be constitutionally regulated, the record before us merits a six-month suspension without pay. *Infra* ¶¶ 51–63.

¶49    Judge Kwan has repeatedly stated that judges may, in his view, constitutionally be prohibited from endorsing or opposing candidates for office. *See* UTAH CODE JUD. CONDUCT R. 4.1(A)(3) ("Except as permitted in this Canon, a judge . . . shall not . . . publicly endorse or oppose a candidate for any public office . . . ."). Judge Kwan initially coupled his concession with an assertion that to run afoul of rule 4.1(A)(3), a judge's statement must expressly name a political candidate. During the hearing before this court, however,

---

[4] We also note the unconventional nature of this rule, which we articulated and applied without citation to precedent in *In re Christensen* and *In re Anderson*. *See In re Christensen*, 2013 UT 30, ¶¶ 8–10; *In re Anderson*, 2004 UT 7, ¶¶ 63–67. A review of other jurisdictions' decisions suggests that, as a matter of course, constitutional challenges are considered in judicial disciplinary proceedings without any similar requirement. *See, e.g.*, *Inquiry Concerning a Judge No.14-488 re: Shepard*, 217 So. 3d 71, 77–80 (Fla. 2017); *In re Chmura*, 608 N.W.2d 31, 38–43 (Mich. 2000); *In re Hill*, 8 S.W.3d 578, 582–83 (Mo. 2000) (en banc); *In re Vincent*, 172 P.3d 605, 606–11 (N.M. 2007); *In re Judicial Campaign Complaint Against O'Toole*, 24 N.E.3d 1114, 1120–28 (Ohio 2014); *In re Neely*, 390 P.3d 728, 735–47 (Wyo. 2017).

Judge Kwan addressed a September 26, 2016 posting, in which he implicitly referenced then-presidential candidate Donald Trump: "Is the fact that the IRS has audited you almost every year when your peers hardly ever or never have been, something to be proud of? What does that say . . . about your business practices?" In response to questions from the bench, Judge Kwan characterized the posting as "an inappropriate comment on a political candidate," and stated that rule 4.1 could constitutionally be applied to restrict that speech.[5]

¶50   Simply stated, we do not reach the merits of Judge Kwan's constitutional arguments, as they are not properly before us under our unchallenged precedent. But Judge Kwan's inability to press those claims does not have any bearing on the discipline he will receive. For the reasons discussed below, the single online posting regarding then–presidential candidate Donald Trump, together with the other conduct Judge Kwan admits violated the rules, viewed in light of Judge Kwan's history of judicial discipline, amply justify the sanction the JCC ordered and we implement.

## II. The Appropriate Sanction

¶51 As noted above, Judge Kwan's main opposition to implementation of the JCC's six-month suspension order is his assertion that the order reflects an unconstitutional attempt to regulate protected speech. As also noted above, that argument is not before us. Judge Kwan is left with his secondary argument that a

---

[5] During the hearing, Judge Hagen referenced the September 26, 2016 posting and asked, "How is that not a comment on a particular candidate for political office?" Judge Kwan's counsel replied, "It is a comment on a political candidate. And it's an inappropriate comment on a political candidate . . . . When you talk about a candidate not paying his taxes, yes, that's a statement that's critical of that candidate." Justice Pearce followed up, asking, "You believe that even if this September 26 statement is found to violate the rule, [it] would violate the judge's constitutional rights to speak?" Counsel replied, "No. . . . [T]hat was an inappropriate comment by a judge . . . that violated the rule." Counsel also agreed that the "rule could constitutionally be applied to the judge in this instance." And when Judge Harris confirmed, "I think I perceive you conceding that there is at least one violation of the code whose constitutionality you are not challenging with regard to this September 26, 2016 comment," Counsel again replied, "Correct."

lesser penalty, such as probation, would be a more appropriate incremental step-up in the sanctioning process.

¶52 Suspension without pay is a particularly significant penalty that carries substantial consequences. But given the record before us, it is the appropriate penalty. And six months is an appropriate term. A lesser period would fail to adequately address the degree to which Judge Kwan has varied from our judicial code, the repeat nature of Judge Kwan's conduct, his disregard of the specific guidance and former discipline he has received, and the importance of the principles his conduct has trampled.

¶53 The confidence the public places in our state judicial system, and the respect afforded our rulings, turns in large part on our collective credibility. Thus, "[i]nherent in all the [r]ules contained in [the Utah Code of Judicial Conduct] are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system." UTAH CODE JUD. CONDUCT Preamble [1]. And "[c]onduct that compromises or appears to compromise the independence, integrity, and impartiality of a judge undermines public confidence in the judiciary." *Id.* 1.2 cmt. 3. In other words, every time a judicial officer engages in misconduct, he or she spends the goodwill of the judiciary as a whole.

¶54 Here, we readily conclude that Judge Kwan has been spending our goodwill. As Judge Kwan admits, his in-court political comment regarding President Donald Trump violated Utah Code of Judicial Conduct Rules 1.2 and 2.8. *See* UTAH CODE JUD. CONDUCT R. 1.2 ("A judge . . . shall not undermine . . . public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety."); *id.* 2.8(B) ("A judge shall be patient, dignified, and courteous to litigants, . . . court staff, . . . and others with whom the judge deals in an official capacity . . . .").[6] This comment continues a pattern of behavior that led to our first public reprimand of Judge Kwan, following his in-

---

[6] Because it is unnecessary to the resolution of this proceeding, we do not resolve whether the comments also violated rule 4.1, as the JCC concluded. *See* UTAH CODE JUD. CONDUCT R. 4.1(A)(10) ("Except as permitted in this Canon, a judge . . . shall not . . . make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court . . . .").

court reference to sexual conduct and a former president of the United States. And it demonstrates an ongoing failure to exercise appropriate judgment and restraint when making statements during judicial proceedings.

¶55 Moreover, as Judge Kwan concedes, his handling of his dispute with court personnel—regarding an administrative matter undertaken without his involvement—violated rule 2.8. *See* UTAH CODE JUD. CONDUCT R. 2.8(B). We recognize there may be instances in which a judge, attempting his or her best efforts, might nevertheless fail to handle an administrative matter with the highest degree of patience and courtesy. And not "every transgression" of the high standards to which judges are held is meant to "result in the imposition of discipline." *Id.* Scope [6]. But this proceeding does not involve an intraoffice disagreement in which a judge's conduct fell just short of the ideal. Rather, Judge Kwan's interactions with court personnel were well outside the bounds of any acceptable range of behavior.

¶56 Witnesses reported that Judge Kwan's outburst was intense. And as the JCC concluded, it was followed by an inappropriate attempt to use the judicial office to impose severe consequences—including a threat of suspension and attempted removal from the premises—on a court employee, in violation of rule 1.3. *See id.* 1.3 ("A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge . . . .").

¶57 Finally, Judge Kwan concedes that he posted online commentary in violation of the Utah Code of Judicial Conduct. As Judge Kwan acknowledged before this court, at least one of his online comments criticized then-presidential candidate Donald Trump in violation of rule 4.1(A)(3). *See id.* 4.1(A)(3) ("Except as permitted in this Canon, a judge . . . shall not . . . publicly endorse or oppose a candidate for any public office . . . .").

¶58 "An independent, fair and impartial judiciary is indispensable to our system of justice." *Id.* Preamble [1]. By criticizing a political candidate for office, Judge Kwan engaged in conduct that would appear to a reasonable person to undermine his independence or impartiality, in violation of rules 1.2 and 3.1. *See id.* 1.2; *id.* 3.1(C) ("[W]hen engaging in extrajudicial activities, a judge shall not . . . participate in activities that would appear to a reasonable person to undermine the judge's independence, integrity,

or impartiality . . . .").[7] While Judge Kwan's comments addressed a candidate for national political office, and Judge Kwan may not decide national-scale issues as a justice court judge, those issues may still bear, or appear to bear, in some respects on questions that arise in his courtroom. Or cause those who disagree with Judge Kwan's politics to believe that they will not receive a fair shake when they appear before him.

¶59    But the problem here is not primarily a concern that Judge Kwan has voiced his views on a range of political issues via his criticisms of Donald Trump. Far more importantly, Judge Kwan has implicitly used the esteem associated with his judicial office as a platform from which to criticize a candidate for elected office. Fulfillment of judicial duties does not come without personal sacrifice of some opportunities and privileges available to the public at large. And as a person the public entrusts to decide issues with utmost fairness, independence, and impartiality, a judge must at times set aside the power of his or her voice—which becomes inextricably tied to his or her position—as a tool to publicly influence the results of a local, regional, or national election.

¶60    Judge Kwan's postings continue a pattern of inappropriate political commentary, as previously addressed in our second public reprimand, following Judge Kwan's service as president of a national organization that, among other things, criticized candidates for political office. What's more, the Utah State Bar Ethics Advisory Opinion Committee offered substantial guidance to Judge Kwan on this topic. Judge Kwan nevertheless engaged in behavior that violates our code of conduct, despite the prior attempts to dissuade him from that path.

¶61    We thus conclude, as did the JCC, that Judge Kwan has violated several rules of the Utah Code of Judicial Conduct. And he has engaged in conduct prejudicial to the administration of justice which brings a judicial office into disrepute. *See* UTAH CONST. art. VIII, § 13.

---

[7] Again, because it is unnecessary to the resolution of this proceeding, we do not address whether Judge Kwan's online postings also violated rule 4.1(A)(10), as the JCC concluded. For the same reason, we do not determine whether Judge Kwan's numerous other online postings violated any provisions of the Utah Code of Judicial Conduct.

¶62 Whether to impose discipline, and the type of discipline to be imposed, depends on several factors such as the seriousness of the improper activity, "the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others." UTAH CODE JUD. CONDUCT Scope [6]. Taking these factors into account, we conclude, as did the JCC, that a six-month suspension is the appropriate sanction.

¶63 We give significant weight to the fact that Judge Kwan has been the subject of prior discipline and the recipient of prior guidance. We note that previous endeavors to help Judge Kwan correct this behavior have not been successful. And we regretfully conclude that a sanction less severe than suspension without pay will suffer the same fate as our prior attempts. Repeated instances of misconduct are serious matters, which may render a judge not only subject to suspension, but also to removal from office. Judge Kwan's behavior denigrates his reputation as an impartial, independent, dignified, and courteous jurist who takes no advantage of the office in which he serves. And it diminishes the reputation of our entire judiciary. For these reasons, we implement the JCC's order without modification.

## CONCLUSION

¶64 We implement the JCC's order. We do not reach the constitutional questions Judge Kwan raises regarding his social media postings, and we limit our review to the online statement that Judge Kwan admits can be constitutionally restricted. Based on that speech, the other misconduct at issue here, as well as Judge Kwan's history before the JCC and before this court, we conclude that a six-month suspension without pay is the appropriate sanction.